IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 11-455 |
| DAVID E. BALLARD | : | |

**SURRICK, J.**                                                     **JANUARY  10 , 2012**

**MEMORANDUM**

Presently before the Court is the Government's Motion Pursuant to Federal Rule of

Evidence 404(b) to Admit Evidence of Defendant's Prior Acts of Identity Theft and Fraud to

Establish Knowledge, Intent and Plan.  (ECF No. 36.)  For the following reasons, the Motion will

be granted.

I.      **BACKGROUND**[1]

On August 11, 2011, a grand jury returned an Indictment charging Defendant David E.

Ballard with eight counts of mail fraud, in violation of 18 U.S.C. § 1342 (Counts One through

Eight)[2], and five counts of aggravated identify theft, in violation of 18 U.S.C. § 1028A (Counts

Nine through Thirteen).  (Indictment, ECF No. 9.)  The Indictment charges that Defendant

devised a scheme to defraud over 1,300 people, and to obtain money and property by means of

false and fraudulent pretenses.  (*Id.*)  Specifically, it is alleged that Defendant obtained personal

identification for these individuals in order to open credit card or Internet payment accounts in

---

[1] The factual background of this action is set forth in more detail in our January 5, 2012 Memorandum and Order denying Defendant's Motion to Suppress Search Warrants.  (ECF Nos. 33-34.)

[2] Count Five charging wire fraud has been dismissed at the request of the Government. (Order, ECF No. 52.)

their names, purchased various items using the accounts without the individuals' permission, and intercepted the items after having them sent to the individuals' home or work addresses. (*Id.*) It is alleged that Defendant then sold these items. (*Id.*)

The Government intends to introduce at trial evidence obtained from executing three state search warrants and one federal search warrant. Detectives from the Philadelphia Police Department had been investigating a series of burglaries at the Safeguard Self Storage facility at 6224 Germantown Avenue, Philadelphia, Pennsylvania. (Dec 6 Hr'g Tr. 52-54, ECF No. 34.) On April 7, 2011, the detectives obtained a warrant to search Unit 315 at the storage facility ("Unit 315"). (*Id.* at 7; Def.'s Suppress Br. Exs. A-B, ECF No. 25.) The detectives understood that Unit 315 was rented by Defendant. (Dec. 6 Hr'g Tr. 7.) When the detectives executed the search warrant on Unit 315, they seized over 500 credit reports, credit cards, driver's licenses, Social Security Cards, checks, birth certificates, check stubs and W-2's, all belonging to individuals other than Defendant. (*Id.* at 24, 31, 27-29, 32, 34-35.) The detectives seized notebooks containing personal identifiers of other individuals not Defendant and information concerning purchases and sales made by Defendant. (*Id.* at 20-21.) The detectives also seized seven Pennsylvania driver's licenses and one identification card in Defendant's name but with different addresses listed. (*Id.* at 21-22.)[3]

 Defendant arrived at Unit 315 while the detectives were conducting their search and was placed under arrest. (Dec. 6 Hr'g Tr. 19, 37.) The detectives conducted a search incident to arrest and seized a laptop computer, an iPod, a cell phone and additional spiral notebooks. (*Id.* at

---

[3] The Government alleges that during subsequent investigations, they discovered that six of the seven addresses listed in the driver's licenses are the same as addresses found in the credit reports and notebooks seized. (Gov't's Mot. 3, ECF No. 36.)

37.)  A second search warrant was obtained to search the laptop computer, the iPod and a number of hard drives and flash drives seized from Unit 315.  (*Id.* at 40; Def.'s Suppress Br. Exs. C-D.) A search of the items listed in the second warrant produced personal information for over 1,000 individuals other than Defendant.  (Def.'s Suppress Br. Exs. E-F.)  Subsequent investigation revealed that numerous other electronic devices, including computers, iPods and gaming systems, had been fraudulently ordered using the information found on the devices listed in the second warrant.  (*Id.*)  On April 28, 2011, a third warrant was issued, requesting information from Apple, Inc. concerning the purchase of the laptop and iPod.  (*Id.*)  The FBI was notified about the information retrieved during the search of Unit 315 and the search of the electronic devices. (Dec. 6 Hr'g Tr. 86.)  The FBI sought and obtained a warrant to conduct another search of Unit 315 for items related to the identity theft charges.  (Def.'s Suppress Br. Ex. G.)

The Government alleges that Defendant made numerous purchases of electronic equipment, including computers, gaming systems and camcorders, over the Internet, using many of the names and personal identifiers found in documents retrieved from Unit 315.  (Gov't's Mot. 4.)  The Government further alleges that Defendant many times shipped these purchases to various individuals' addresses and then attempted to intercept the purchased items using identification cards bearing the individuals' addresses.  (*Id.*)

On October 31, 2011, Defendant filed a motion to suppress the search warrants and all of the evidence obtained pursuant to those warrants.  (Def.'s Mot. Suppress, ECF No. 25.)  On January 5, 2011, we issued a Memorandum and Order denying Defendant's motion.  (ECF Nos. 33-34.)

On December 12, 2001, the Government filed the instant Motion Pursuant to Federal

Rule of Evidence 404(b) to Admit Evidence of Defendant's Prior Acts of Identity Theft and Fraud to Establish Knowledge, Intent and Plan. (Gov't's Mot.) The Motion requests that the Court admit evidence related to Defendant's prior possession of credit reports in other individuals' names, and his prior use of personal identifying information to open credit cards in other individuals' names. The Government also seeks to admit evidence of two prior instances of trespass by Defendant to the extent necessary to establish Defendant's prior possession and use of credit reports.

The Government proposes to offer into evidence a few dozen credit reports, the testimony of a police officer who arrested Defendant during one of his prior trespasses, and the testimony of an alleged victim of Defendant's previous identity theft scheme. With this proffer, the Government intends to describe the following chain of events. Sometime in 2008, B.J., the former owner and manager of Walnut Lane Apartment House ("Walnut Lane"), began receiving mail, including credit cards that she never requested. These were addressed in her name but to a vacant apartment at Walnut Lane. (Gov't's Mot. 5.) When she checked her credit report, she discovered that her address had been changed to 5231 Pulaski Avenue.[4] On April 21, 2009, police arrested Defendant for trespassing at a vacant apartment at Walnut Lane. (*Id.*) B.J. went to the police station to press charges and was provided information about Defendant's identity. (*Id.*) The address given by Defendant upon his arrest was the same address as the changed address on her credit report. (*Id.*) When B.J. returned to Walnut Lane, she went into the vacant apartment where Defendant had trespassed and discovered, among other things, credit reports

_____

[4] The Pulaski Avenue address is the same address listed on one of the driver's licenses found in Unit 315. Defendant also allegedly provided this address two times to law enforcement agents upon his arrests. (*Id.*)

4

and credit cards in names of individuals not Defendant.  (*Id.* at 6.)  B.J. later discovered a series of unauthorized charges on her credit card statement.  (*Id.*)

On May 7, 2009, the police again arrived at Walnut Lane after receiving a report that someone was trespassing in another vacant apartment at the complex.  (*Id.*)  Police found Defendant in the vacant apartment.  Defendant was arrested, and the police found credit reports in the backpack that he was wearing.  (*Id.*)  The Government advises that thirty-one of the credit reports seized during these 2009 trespasses were for the same individuals whose credit reports were seized at Unit 315.  (*Id.* at 7.)[5]  The Government also advises that of the 187 individuals whose names and personal identifiers Defendant possessed on the two trespassing occasions, 106 were the same individuals whose personal identifiers were found and seized at Unit 315. (Gov't's Supp. Mot. 1, ECF No. 50.)  Moreover, the credit reports found during the 2009 trespasses bear similar characteristics to the ones recovered from Unit 315 in that both sets contain handwritten notes of individuals' personal identifying information, website addresses and purchase orders.  (*Id.*)

Defendant was subsequently charged in the Philadelphia Court of Common Pleas with two trespassing counts and a fraud count related to Defendant's unauthorized use of B.J.'s credit card.  (*Id.* at 6 n.4.)  Defendant was released on bail but thereafter failed to appear in state court. (*Id.*)

On January 4, 2012, Defendant filed a response to the Government's Motion.  (Def.'s Resp., ECF No. 39.)  On December 6, 2011, the Government filed a Supplement to its Motion. (Gov't's Supp. Mot.)  The purpose of the Supplement was to advise the Court of additional

---

[5] B.J. is one of the individuals whose credit report was found in Unit 315.

information that the Government discovered when reviewing the credit reports and other items

seized during the 2009 trespassing events.  Trial is scheduled for January 9, 2012.  (Order, ECF

No. 16.)

## II.    LEGAL STANDARD

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act

is not admissible to prove a person's character in order to show that on a particular occasion the

person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Rule 404(b) also

provides that "[t]his evidence may be admissible for another purpose, such as proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident."  *Id.* at 404(b)(2).

The Third Circuit applies a four-part test to determine whether Rule 404(b) evidence

should be admitted:  (1) the evidence is relevant; (2) it must be offered for a proper purpose; (3)

its probative value must outweigh its potential for unfair prejudice; and (4) the Court must charge

the jury to consider the evidence only for the limited purpose for which it is admitted.  *United

States v. Moore*, 375 F.3d 259, 263-64 (3d Cir. 2004); *see also Huddleston v. United States*, 485

U.S. 681, 691-92 (1988).

## III.    DISCUSSION

The Government argues that the proffered evidence is relevant and offered for proper

purposes of proving Defendant's plan, intent, knowledge, modus operandi and absence of

mistake or accident.  The Government further argues that the probative value of the evidence is

not substantially outweighed by the danger of unfair prejudice.  Defendant responds that the

evidence is needlessly cumulative and that admitting the evidence at trial would be a waste of

time under Federal Rule of Evidence 403.[6]

### A.   Relevance

In order for evidence of "other crimes, wrongs, or acts" to be admissible, it must be relevant. *Huddleston*, 485 U.S. at 689.  Evidence is relevant if it has any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401.  In assessing whether the proffered evidence is relevant, we consider the charges brought against Defendant.  Defendant has been charged with mail fraud under 18 U.S.C. § 1341.  That statute makes it unlawful for any person,

> having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . . [to] place[] in any post office . . . any matter or thing . . . to be sent or delivered by the Postal Service . . . or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail . . . any such matter or thing.

18 U.S.C. § 1341.  Defendant has also been charged with aggravated identity theft in violation of 18 U.S.C. § 1028A.  That statutory provision makes it unlawful for any person to, "during and in relation to any felony violation enumerated in subsection (c) [which includes wire fraud], [to] knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1).

In this case, the Government has the burden to prove that Defendant knowingly possessed or used the credit reports and other means of identification of others, *see* 18 U.S.C. § 1028A(a)(1), and that Defendant had the intent to use the Postal Service to effectuate his fraudulent scheme, *see* 18 U.S.C. § 1341.  Since intent and knowledge are essential elements of

---

[6] Defendant addresses only the issue of whether the probative value is substantially outweighed by the danger of unfair prejudice.  He does not discuss the other factors.

the charges that the Government must prove, evidence of prior similar conduct is relevant to show intent since "as a matter of logic, it is at least marginally more likely that [defendant acted] intentionally if he had previous experience with" the same or similar conduct. *United States v. Staten*, 181 F. App'x 151, 155 (3d Cir. 2006); *see also Gov't of Virgin Islands v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992).

Here, Defendant's prior possession of credit reports in other individuals' names, and prior unauthorized use of credit information to open credit card accounts was similar, if not identical, to the conduct charged in the Indictment. This evidence goes directly to the issues of knowledge and intent. It shows that Defendant had previous experience with the use of credit reports to defraud others, and thus had the requisite knowledge and intent to commit the crimes charged in the Indictment. *Staten*, 181 F. App'x at 155; *see also United States v. Lee*, 573 F.3d 155, 158, 166 (3d Cir. 2009) ("[T]he [defendant's] prior drug trafficking conviction was properly admitted as evidence that [the defendant] intended to distribute any drugs in his possession.").

Courts have found evidence of prior bad conduct to be relevant and admissible in identity theft cases. In *United States v. Jiminez*, the defendant challenged his identity theft conviction on the basis that certain evidence that was admitted at trial was highly prejudicial and not relevant. 507 F.3d 13, 16 (1st Cir. 2007). Specifically, the defendant challenged the admission of documents seized from defendant bearing personal identifying information for individuals who were different than the victims subject to the charges against him. *Id.* The First Circuit affirmed the conviction and determined that the evidence was relevant to prove that the defendant was engaged in an effort to misappropriate identities. *Id.* at 16. The Court stated that the acts with which Defendant was charged "were the culmination of that effort." *Id.* at 16-17.

8

In this case, Defendant's prior possession of credit reports and personal identifiers of other individuals establishes that defendant was "engaged in an effort to misappropriate identities." *Id.* at 17.  The evidence is relevant to prove the aggravated identity theft and mail fraud charges he now faces as these charges show the "culmination of that effort." *Id.* at 16-17; *see also United States v. Komolafe*, 246 F. App'x 806, 811 (3d Cir. 2007) (not precedential) (holding that testimony of defendant's prior uncharged fraudulent conduct was relevant to prove his convictions of aggravated identity theft, bank fraud and unauthorized use of access devices).[7]

### B.   Proper Purpose

In addition to being relevant, the evidence the Government proffers must also be offered for a proper purpose, and not offered merely to prove the character of Defendant in an effort to show that he acted in conformity therewith.  Fed. R. Evid. 404(a); *United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999) (noting that a court may admit evidence of prior bad conduct "if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime") (internal quotation marks omitted); *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992) (noting that for Rule 404(b) evidence to be admissible, the prosecution "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he

---

[7] The evidence showing that Defendant twice lied to law enforcement officers about his current address is also relevant under Rule 404(b).  The Third Circuit has consistently held that "evidence of a defendant's flight after a crime has been committed is admissible to prove the defendant's consciousness of guilt." *United States v. Pungitore*, 910 F.2d 1084, 1151 (3d Cir. 1990); *see also United States v. Green*, 25 F.3d 206, 210 (3d Cir. 1994) (same).  Here, when Defendant was arrested on two different occasions, he lied to the police by giving them a false address.  Defendant's attempt to evade police officers by providing an incorrect address is analogous to fleeing after a crime has been committed.  It is relevant, admissible evidence.

therefore is more likely to have committed this one").  Proper purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

The Government contends that Defendant has previously committed the same crimes as charged in the Indictment, in the same manner—through the use of credit reports and credit card accounts—and against many of the same victims.  The Government argues that this evidence is offered to establish Defendant's knowledge, intent and plan.

We have determined that the proffered evidence is relevant to show that Defendant had the knowledge and intent to commit identity theft and mail fraud.  *See supra* ¶ III.A.  Knowledge and intent are proper purposes under Rule 404(b).  We also believe that the Government's purpose for offering the evidence to establish that Defendant had a plan with respect to his possession and use of credit reports is a proper purpose under Rule 404(b).

Evidence of an "overarching scheme can provide circumstantial evidence of a defendant's guilt by explaining his motive in committing the alleged offense."  *United States v. Cross*, 308 F.3d 308, 322-23 (3d Cir. 2002).  Here, the evidence will show Defendant's design for his overarching scheme.  He obtains credit reports and other personal identifying information of others, uses that information to open credit card accounts, purchases items using those accounts, has the items shipped through the U.S. Postal Service, and intercepts the packages at the addresses of the victims.  Moreover, the credit reports found during the trespassing events and those found in Unit 315 were frequently for the same individuals and bear the same characteristic notations on them.  In fact, of the 187 individuals whose personal identifying information Defendant possessed in 2009, 106 were the same individuals whose personal identifying

10

information Defendant possessed in 2011 when he was arrested at Unit 315.  The evidence links the prior conduct and the current charges in such a way that the entire plan could be viewed as a "single series of events."  *Pinney*, 967 F.2d at 916 ("Ordinarily, when courts speak of 'common plan or scheme,' they are referring to a situation in which the charged and the uncharged crimes are parts of a single series of events.").

Accordingly, we are satisfied that the Government has offered a proper purpose for admission of the evidence.  *See Johnson*, 199 F.3d at 128 (holding that evidence of a prior robbery was admissible under Rule 404(b) for proper purpose of showing common plan at the defendant's conspiracy to commit robbery trial); *Komolafe*, 246 F. App'x at 811 (evidence of prior fraudulent conduct had a proper purpose under Rule 404(b) in the defendant's aggravated identity theft case to "establish [defendant's] access to fraudulently obtained identification information; knowledge of how to open bank accounts using that information . . . and that [defendant] did not accidentally become involved or mistakenly play a role in the conduct charged in the indictment"); *United States v. Crawford*, 376 F. App'x 185, 188 (3d Cir. 2010) (not precedential) (in identity theft and wire fraud case, finding that the government had a proper purpose in admitting evidence that defendant possessed fraudulent identification documents to establish preparation, plan, knowledge, absence of mistake or accident and opportunity).

### C.    **Rule 403 Balancing**

Even if the proffered evidence is relevant and offered for a proper purpose, it may not be admitted "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *see also Huddleston*, 485 U.S. at 691.  Rule 403 also instructs that evidence should be excluded if its probative value is substantially outweighed by the danger of "confusion

11

of the issues, [] misleading the jury, [] considerations of undue delay, waste of time, or needless

presentation of cumulative evidence." Fed. R. Evid. 403.  Factors to consider in performing Rule

403 balancing in the Rule 404(b) context include:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

Kenneth S. Braum *et al.*, McCormick on Evidence § 190 (6th ed. 2009).  In weighing the

probative value of evidence against the dangers . . . in Rule 403, the general rule is that the

balance should be struck in favor of admission." *Johnson*, 199 F.3d at 128 (quoting *United

States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980)).

The Government argues that the probative value is not outweighed by the danger of unfair

prejudice because the evidence of prior crimes is substantially less in volume than, and relatively

minor as compared to, the evidence in support of the charged crimes.  In response, Defendant

merely contends that the evidence is prejudicial because it is cumulative in relation to the other

evidence the Government intends to present, and "simply adds time and expense to the trial."

(Def.'s Resp. 4.)

We are satisfied that the probative value of this evidence is not outweighed by the

potential for unfair prejudice.  Defendant does not indicate that the admission of Defendant's

prior conduct is more prejudicial than probative.  Defendant simply argues that this evidence is

cumulative, will extend the length of the trial and is a waste of time.

The evidence of Defendant's prior commission of identity theft is strong.  The

Government proposes to offer the testimony of B.J., who has intimate knowledge of the prior

conduct, not only because she was herself a victim, but also because she personally observed the

credit reports in one of the vacant apartments trespassed by Defendant.  The Government also intends to offer the testimony of an arresting officer, who will have knowledge of the credit reports found on Defendant when he was arrested.  Moreover, the prior conduct described and the charges in the Indictment are similar.  The time elapsed between the prior and charged crimes is at most three years and not significant.  The need for the evidence is clear:  to prove the elements of intent and knowledge, and lack of mistake.  Finally, we do not believe that this type of evidence will inflame the jury.  In any event, any threat of unfair prejudice can be cured with a proper limiting instruction.

### D.     Limiting Instruction

In *Huddleston*, the Supreme Court held that a district court must "instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." 485 U.S. at 691-92.  Consistent with *Huddleston*, we will offer limiting instructions both at the time that the evidence is admitted and in the final jury instructions.  *See United States v. Cruz*, 326 F.3d 392, 396 ("[T]he district court met the fourth requirement for admission of Rule 404(b) evidence by carefully providing the jury with limiting instructions both immediately after [the prior bad act evidence] testimony and also during the jury charge.").  The limiting instruction will include the Third Circuit Model Criminal Jury Instruction 2.23, which deals with the limited purpose for which Rule 404(b) evidence may be considered by the jury.

## IV.   CONCLUSION

For the foregoing reasons, the Government's Motion Pursuant to Federal Rule of Evidence 404(b) to Admit Evidence of Defendant's Prior Acts of Identity Theft and Fraud to Establish Knowledge, Intent and Plan will be granted.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**